# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**MEGAN GARCIA,**

    **Plaintiff**                            *PLAINTIFF DEMANDS*
                                                   *TRIAL BY JURY*

    **v.**

**PAMELA CASEY,**
**SCOTT GILLILAND,**
**SUE ASHWORTH and**
**BRIAN K. RATLIFF,**

    **Defendants**

## COMPLAINT

## INTRODUCTORY STATEMENT, JURISDICTION AND PARTIES

1. Plaintiff brings this action for violation of her right, protected by the Fourth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth, not to be subjected to unreasonable seizure. She further asserts related causes of action under Alabama common law.

2. This Court has jurisdiction pursuant to 42 U.S.C. § 1983, which creates a cause of action for violations of constitutional rights committed under color of state law. In addition, jurisdiction is premised on 28 U.S.C. §§ 1331 (federal question) and 1343(civil rights). Further, plaintiff invokes this Court's supplemental jurisdiction pursuant to 42 U.S.C. § 1367.

3. Venue is proper in this Court since all acts alleged occurred in Blount

County in the Northern District of Alabama.

4. Plaintiff, Megan Garcia, is an adult currently residing in the State of Georgia.

5. Defendant, Pamela Casey (Casey), was at all times relevant to this action, the Blount County District Attorney. As the District Attorney, she was a policy making official regarding law enforcement policy, specifically including determining probable cause to arrest in a given situation. Her actions complained of in this complaint were taken under color of state law and in her capacity as a policy maker. She is sued in her individual capacity.

6. Defendant, Scott Gilliland (Gilliland), was at all times relevant to this action a Blount County Assistant District Attorney acting under color of state law. He is sued in his individual capacity.

7. Defendants, Sue Ashworth (Ashworth) and Brian K. Ratliff (Ratliff), were at all times relevant to this action Blount County deputy sheriffs acting under color of state law. They are sued in their individual capacities.

## STATEMENT OF FACTS

8. Plaintiff is an attorney licensed to practice in Alabama and Georgia. On February 23, 2017, she was employed as an associate by the Revill Law Firm based in Birmingham, Alabama, having just begun her career. On that date, she and her employer, Victor Revill, were representing an individual named Lloyd Edwards in

Blount County.

9. Mr. Edwards's wife was seeking a protection from abuse order. Prior to the hearing, Mr. Edwards advised plaintiff and Mr. Revill that his wife had sent him explicit and suggestive pictures and videos of herself via text message after she had filed the protection from abuse petition.

10. After the hearing, Mr. Edwards told plaintiff and Mr. Revill that he had the pictures and videos on three cell phones, two of which were no longer in service. Mr. Revill asked for the two cell phones that were no longer in service so that he could, after returning to his office, retrieve the images and texts. Mr. Edwards handed over the two cell phones to plaintiff, who placed them in her satchel before leaving the courthouse. Evidently, Ashworth and Ratliff had been secretly watching Mr. Edwards and his lawyers on courthouse surveillance cameras.

11. Upon their leaving the courthouse, plaintiff, Mr. Revill and Mr. Edwards were confronted by Ashworth and Ratliff. Both these defendants participated in all subsequent events outside the courthouse as described in this complaint, including plaintiff's arrest. Ratliff told Mr. Edwards he had a warrant to search his person and his vehicle. Mr. Revill reviewed the warrant, confirmed that its scope was specific to Mr. Edwards's person and vehicle, and instructed his client to permit the search.

12. Following the search of Mr. Edwards's person and vehicle, Ashworth demanded from Mr. Revill the two phones that plaintiff had in her satchel. Mr. Revill

stated that the search warrant did not include plaintiff or her satchel and he therefore advised Ratliff and Ashworth he would not consent to the search of the satchel and would not voluntarily turn over the phones. Neither Ashworth nor Ratliff spoke to plaintiff and she did not speak to them.

13. Ashworth advised Mr. Revill that he and plaintiff were being detained until she and Ratliff could "determine the next course of action."

14. Ashworth then called Casey and Gilliland. She told them they saw Mr. Edwards hand his phones to his attorneys. After her telephone conversation, she advised Mr. Revill that "we either need the phone out of the satchel or we will have to detain you and get a search warrant to get the phone." Mr. Revill responded that neither he nor plaintiff were "going anywhere."

15. Ashworth again spoke to Casey, who instructed her to arrest plaintiff and Mr. Revill for "obstructing government operations," a Class A misdemeanor. She and Ratliff effected the arrests as ordered by Casey. On information and belief, Gilliland was consulted and participated in these discussions and the decision to make the arrests. The first time in the entire exchange when plaintiff was addressed by either Ashworth or Ratliff was when she was told she was under arrest. At no time did plaintiff say a word.

16. Neither plaintiff nor Mr. Revill prevented Ashworth or Ratliff from seizing the phones. Mr. Revill advised that he did not consent to a search or seizure

not authorized by warrant and plaintiff, following her employer's advice, did not offer to turn the satchel over. Neither Ashworth nor Ratliff ever addressed plaintiff or made any demand directly upon her. Plaintiff never explicitly refused to turn over the phones since she was never asked to do so.

17.  After Plaintiff and Mr. Revill were arrested and handcuffed, Gilliland came out of the courthouse, stood in the doorway holding the door open, and said to them in the presence of several other people, "Ya'll the ones knowingly in possession of child pornography? That was a bad mistake." Gilliland had no information that plaintiff knew there was child pornography on the phones and absolutely no reason to believe she had such knowledge. In fact, the only knowledge Gilliland had that the phones contained child pornography was an uncorroborated claim to that effect made by Mr. Edwards's wife who, Gilliland had reason to know, had a hostile relationship with her erstwhile husband. The only knowledge plaintiff had of any of the content on the phones was what was communicated to her by Mr. Edwards, as described in paragraphs 9 and 10, above.

18.  Plaintiff remained handcuffed outside the courthouse for at least thirty minutes while numerous people passed by and entered and left the courthouse. She was then taken to the Blount County Jail and booked. She remained in custody for approximately four hours and was required to pay for a $3,000 bond. No consideration was given to her being released on her own recognizance.

19. Ashworth, in justifying the arrest, averred in her application for a warrant, "I was attempting to serve a search warrant on Lloyd Clinton Edwards. Victor Revill and Megan Garcia were in possession of an item subject to the search warrant and refused to hand over said item." As described above, however, the search warrant was for Mr. Edwards's person and vehicle. An item in plaintiff's possession was, by the terms of the warrant, not subject to it, as Mr. Revill had advised her. Further, as noted, neither Ashworth nor Ratliff made any demand on plaintiff. She, in turn, never refused to hand the phones over since she was never asked to. Therefore, there was no probable cause, or arguable probable cause, for her arrest.

20. Following the arrests, on March 17, 2017, Carol Robinson, a reporter for AL.com, a prime news source in Alabama, published an account of the incident that included the following:

> Casey on Friday said it is a crime for anyone, even a lawyer, to intentionally prevent a public servant from performing a governmental function or refuse to permit inspection of property that a public servant is legally authorized to inspect. In this case, she said, officers had a search warrant seeking recovery of any device or devices, including the subject's cell phone or cell phones, which were believed to contain child pornography.
>
> "Within minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography, Mr. Revill and Ms. Garcia took possession of their client's phones and attempted to conceal the phones from law enforcement," Casey said. "Such acts are not only illegal, but unethical. Rule 3.4 of the Alabama Rules of Professional Conduct provides that a lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary

> value. A lawyer shall not counsel or assist another person to do any such act. My office will not be intimidated by a lawyer or anyone else who continues to attempt to manipulate the judicial process and/or criminal justice system by public grandstanding."

The article has been shared at least 235 times. There is no telling how many people have viewed it.

21.    Casey had no more information than did Gilliland that plaintiff knew there was child pornography on the phones in her possession. She likewise had only the uncorroborated claim of Mr. Edwards's wife that there was such material on the phones and no information whatsoever that plaintiff and Mr. Revill had been so advised, which they had not. Indeed, if she did have any information concerning what plaintiff and Mr. Revill knew, the only way she could have obtained it would have been by intruding on confidential communications between Mr. Edwards and his lawyers. In light of her claimed familiarity with ethical rules, one would think she was aware she had no right to do so.

22.    Plaintiff and Mr. Revill were tried for Obstructing Governmental Operations (Ala. Code §13A-10-2) and Refusal to Permit Inspection (Ala. Code §13A-10-3) on March 29, 2018.  A motion for judgment of acquittal was granted at the close of the state's case, with the court finding no basis for either charge. Although Casey stated publicly the decision would be appealed, no appeal followed and the judgment of acquittal is final.

23. The statements made by Casey and Gilliland concerning plaintiff were false and defamatory. At a minimum, they were made recklessly and with no factual basis. Among other damages to her reputation, she now has an arrest record and will incur the expense of having the charges against her expunged.

24. As a direct and proximate result of the acts complained of, plaintiff suffered traumatizing embarrassment and humiliation, had to retain legal counsel to defend against unwarranted charges, had to take time and miss work to travel to Alabama for trial (following the incident, she moved to Georgia), and was wrongfully incarcerated for several hours. At the time of the incident, plaintiff was a recent admittee to the state bars of Alabama and Georgia, just beginning her career. Both the state bars became aware of the criminal charges against plaintiff and warned her that her standing and her licenses to practice law could be affected by the outcome, heightening her anxiety. She was forced to go through months of worry before trial and the effect it would have on her personally and professionally. Despite the frivolousness of the charges, the doubt that attended their pendency hung heavily over her.

25. Casey persisted in pursuing the charges against plaintiff even though any impartial observer would have seen them as baseless.

## FIRST CAUSE OF ACTION

26.  Casey, Gilliland, Ashworth and Ratliff violated plaintiff's constitutional right not to be subjected to an unreasonable seizure by their participation in her arrest without arguable probable cause as described above.

**WHEREFORE,** plaintiff seeks the following relief:

1.  Such compensatory and punitive damages as a jury may award;

2.  Pursuant to 42 U.S.C. § 1988, her costs and reasonable attorney fees; and

3.  Such other, further and different relief as to which she may be entitled.

## SECOND CAUSE OF ACTION

26.  Gilliland's statement, as described in paragraph 17, above, was defamatory and made knowingly or recklessly.

27.  At the time of her arrest, plaintiff was not a public figure. She had just begun her career as a lawyer and had never before been in the public eye. Even if she were a public figure, the statement was made maliciously and Gilliland must at least have entertained serious doubts about whether or not it was true.

**WHEREFORE**, plaintiff seeks such compensatory and punitive damages against Gilliland as a jury may award, plus her costs.

## THIRD CAUSE OF ACTION

28.     Ashworth's statement to the press, described in paragraph 20, above, was defamatory.

29.     At the time of her arrest, plaintiff was not a public figure. She had just begun her career as a lawyer and had never before been in the public eye.  Even if she were a public figure, the statement was made maliciously and Casey must at least have entertained serious doubts about whether or not it was true.

30.     Casey's statement was made nearly a month after plaintiff was arrested and she had every opportunity to verify her claims before making them.

**WHEREFORE**, plaintiff seeks such compensatory and punitive damages against Casey as a jury may award, plus her costs.


## FOURTH CAUSE OF ACTION

31.     Defendants initiated the criminal case against plaintiff. Ashworth and Ratliff did so by arresting her. Casey and Gilliland did so by authorizing or ordering the arrest and pursuing the prosecution. There was no probable cause for the arrest and proceedings were terminated in plaintiff's favor.

32.     Defendants sought to do, and did do, injury to plaintiff by incarcerating

her and forcing to defend herself against baseless charges and endure months-long apprehension and concern until the proceedings terminated.

33.     Defendants' actions constitute malicious prosecution under the common law of Alabama.

**WHEREFORE**, plaintiff seeks such compensatory and punitive damages against defendants as a jury may award, plus her costs.

## FIFTH CAUSE OF ACTION

34.     Plaintiff alleges that Casey initiated the actions against plaintiff and Mr. Revill with the intent and purpose of intimidating and cowing criminal defense lawyers so as to frighten them into not providing their clients with the vigorous and conscientious representation they are entitled to by virtue of the constitutions of the United States and the State of Alabama. She violated Alabama Rule of Professional Conduct 3.8(1)(a) in that she prosecuted a case she knew was not supported by probable cause.

35.     Casey not only knew the charge against plaintiff was not supported by probable cause but, in violation of Rule 3.6 of the Alabama Rules of Professional Conduct, stated as fact that plaintiff had committed a criminal act and that she violated ethical rules, as described in paragraph 20, above.

36. Casey's use of process for the purpose of intimidating other attorneys was wrongful and malicious and thus constitutes abuse of process.

**WHEREFORE**, plaintiff seeks such compensatory and punitive damages against Casey as a jury may award, plus her costs.

/s/ Alan Lasseter
Alan Lasseter
301 19th Street North
Suite 580
Birmingham, AL 35203-3145
205-458-1212
alan@lasseterlaw.com


/s/ David Gespass
David Gespass
GESPASS & JOHNSON
P.O. Box 550242
Birmingham, AL 35255-0242
205-323-5966
205-323-5990 (fax)
pass.gandjlaw@gmail.com
Attorneys for Plaintiff

*PLAINTIFF DEMANDS TRIAL BY JURY*