**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MEGAN GARCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-02079-KOB** |
| | ) | |
| **PAMELA CASEY, SCOTT GILLILAND,** | ) | |
| **SUE ASHWORTH, and BRIAN K.** | ) | |
| **RATLIFF,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **VICTOR REVILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:19-CV-00114-KOB** |
| **v.** | ) | |
| | ) | |
| **PAMELA CASEY, SCOTT GILLILAND,** | ) | |
| **SUE ASHWORTH, and BRIAN K.** | ) | |
| **RATLIFF,** | ) | **THIS DOCUMENT RELATES TO** |
| | ) | **BOTH CASES** |
| **Defendants.** | ) | |

**<u>REVISED MEMORANDUM OPINION</u>**

This matter comes before the court on Defendants Pamela Casey and Scott Gilliland's

motions to dismiss. (Garcia Doc. 25; Revill Doc. 2).[1]

This consolidated action stems from the events of February 23, 2017. Plaintiffs Megan

Garcia and Victor Revill, both lawyers, were representing a client, Lloyd Edwards, in state court

---

[1] To prevent confusion regarding the two docket sheets for these consolidated cases, the court
will use "Garcia Doc." to refer to docket entries in the case filed by Megan Garcia, 2:18-CV-
02079-KOB, and will use "Revill Doc." to refer to docket entries in the case filed by Victor
Revill, 2:19-CV-00114-KOB.

to oppose a protection from abuse order sought by Mr. Edwards's wife. Mr. Edwards handed over two cell phones to Ms. Garcia that Plaintiffs believed may contain relevant information regarding the protection from abuse proceedings. Outside the courthouse steps, two Blount County sheriff deputies—Sue Ashworth and Brian K. Ratliff—presented a warrant to search Mr. Edwards. After the search, Deputy Ashworth demanded that Ms. Garcia hand over Mr. Edwards's two cell phones.

When Ms. Garcia refused, Deputy Ashworth called Ms. Casey, the Blount County District Attorney, who allegedly instructed Deputy Ashworth to arrest Ms. Garcia and Mr. Revill for obstructing a government investigation. Deputy Ashworth and Deputy Ratliff proceeded to handcuff and arrest Plaintiffs. While still outside the courthouse, Mr. Gilliland, a Blount County Assistant District Attorney, exited the courthouse and made a statement in front of onlookers that Plaintiffs were knowingly in possession of child pornography. A newspaper article published about three weeks later featured statements from Ms. Casey alleging that Plaintiffs possessed child pornography and manipulated the judicial system.

Ms. Garcia and Mr. Revill each filed separate cases against Ms. Casey, Mr. Gilliland, Deputy Ashworth, and Deputy Ratliff; the complaints alleged multiple counts, including malicious prosecution, unlawful detention, and defamation as well as violations of the Fourth and Fourteenth Amendments.

Ms. Casey and Mr. Gilliland jointly filed motions to dismiss in both cases.[2] The motions are nearly identical, each raising similar immunity arguments to support dismissal. Specifically, in the motion to dismiss Mr. Revill's case, they raised absolute prosecutorial immunity, qualified

---

[2] Deputy Ashworth and Deputy Ratliff have also jointly filed motions to dismiss in both cases. (Garcia Doc. 21; Revil Doc. 9). Deputy Ashworth and Deputy Ratliff's motions to dismiss will be discussed in a separate Memorandum Opinion.

immunity, and state-agent immunity. (Revill Doc. 2). In the motion to dismiss Ms. Garcia's case, they raised absolute prosecutorial immunity, qualified immunity, state-agent immunity, judicial or quasi-judicial immunity, and sovereign immunity. (Garcia Doc. 25). Both motions have been fully briefed and are ripe for review.

On July 1, 2019, this court consolidated the two cases because of the multiple common issues of law and fact. (Revill Doc. 26). So, the court will now consider both motions together because they both raise the same issues of immunity, with the exception of judicial or quasi-judicial immunity and sovereign immunity, which are only raised in Ms. Garcia's case.

## I. Background

On February 23, 2017, Ms. Garcia and Mr. Revill were representing their client, Mr. Edwards, in Blount County state court to oppose a protection-from-abuse order sought by Mr. Edwards's wife. Before the hearing, Mr. Edwards told his attorneys that he received explicit pictures and videos from his wife after she filed for protection from abuse. After the hearing, Mr. Edwards handed two cell phones, which were no longer in service, containing the pictures and videos to Ms. Garcia so she and Mr. Revill could retrieve the images and texts sent by Mr. Edwards's wife. Ms. Garcia put both phones in her satchel.

After Ms. Garcia, Mr. Revill, and Mr. Edwards left the courthouse, Sue Ashworth and Brian K. Ratliff, both Blount County deputy sheriffs, confronted Ms. Garcia, Mr. Revill, and Mr. Edwards with a warrant to search Mr. Edwards's person and vehicle. Mr. Revill reviewed the warrant, then instructed Mr. Edwards to consent to the search. After searching Mr. Edwards and his car, Deputy Ashworth demanded that Mr. Revill produce the two cell phones. Mr. Revill did not consent because the search warrant did not extend to Ms. Garcia or her satchel. Deputy Ashworth and Deputy Ratliff did not speak directly to Ms. Garcia.

Deputy Ashworth then told Mr. Revill that she would detain him and Ms. Garcia until she and Deputy Ratliff could "determine the next course of action." (Garcia Doc. 18 at 4). Deputy Ashworth then allegedly called Pamela Casey, the Blount County District Attorney, and/or Mr. Gilliland, a Blount County Assistant District Attorney. Deputy Ashworth explained that she saw Mr. Edwards hand the phones to his attorneys. After that phone call, Deputy Ashworth told Mr. Revill that "we either need the phone out of the satchel or we will have to detain you and get a search warrant to get the phone." (*Id.*).

Deputy Ashworth then made another call, allegedly to Ms. Casey. Plaintiffs believe that Ms. Casey instructed Deputy Ashworth to arrest Ms. Garcia and Mr. Revill because immediately following the call, Deputy Ashworth and Deputy Ratliff arrested Plaintiffs for obstructing government operations. Mr. Revill did not consent to a search or seizure not authorized by a warrant. Neither Deputy Ashworth nor Deputy Ratliff addressed Ms. Garcia during the arrest, so although she did not offer to turn the satchel over, she also did not expressly refuse to turn over the phones.

After Plaintiffs were handcuffed, Mr. Gilliland walked out of the courthouse and said in front of several onlookers, "Ya'll [sic] the ones knowingly in possession of child pornography? That was a bad mistake." (Garcia Doc. 18 at 5; Revill Doc. 1 at 7). Plaintiffs allege they were unaware of any child pornography; Mr. Edwards's wife merely claimed—without any corroboration—during the hearing that the phones contained child pornography.

Plaintiffs remained handcuffed outside the courthouse in public for approximately 30 minutes, while other individuals walked past. The incident was recorded on the body cam of a City of Oneonta police officer. The officer was asked to keep an eye on the two attorneys. At one point, during a discussion with another police officer, the two officers questioned Deputy

Ashworth's actions because the search warrant did not include Ms. Garcia's satchel. The officer with the body cam noted that he did not want to get involved in the situation. (Revill Doc. 1 at 7).

Plaintiffs were then taken to Blount County Jail and booked. They remained in custody for approximately four hours, before being released after paying a $3,000 bond each. When released, they were informed that they were charged with obstruction of governmental operations and refusing to permit inspection.

In the application for the warrant justifying the arrests, Deputy Ashworth averred that she "was attempting to serve a search warrant on Lloyd Clinton Edwards. Victor Revill and Megan Garcia were in possession of an item subject to the search warrant and refused to hand over said item." (Garcia Doc. 18 at 6). But the search warrant only stated that it was for Mr. Edwards's person and vehicle, making no mention of Plaintiffs or Ms. Garcia's satchel.

On March 17, 2017, Carol Robinson, a reporter for AL.com, published an article detailing the arrests. The article included quotes from Ms. Casey, in which Ms. Casey explained that "[w]ithin minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography, Mr. Revill and Ms. Garcia took possession of their client's phones and attempted to conceal the phones from law enforcement." (Garcia Doc. 18 at 6). Ms. Casey called Plaintiffs' actions "not only illegal, but unethical." (*Id.*). The article had been shared at least 235 times as of December 18, 2018.

On March 29, 2018, Robert Crocked and Anna Sparks, who were appointed as temporary district attorneys, prosecuted Plaintiffs for obstructing governmental operations, in violation of Alabama Code § 13A-10-2, and refusal to permit inspection, in violation of Alabama Code § 13A-10-3. Ms. Casey recused herself from the case and did not attend the proceedings, but

allegedly helped prepare Mr. Edwards for the trial on or about March 16, 2018. At the close of the prosecution's case, the court granted Plaintiffs' motion for judgment of acquittal. Although recused, Ms. Casey stated that she would appeal the decision, but never did so.

On December 18, 2018, Ms. Garcia filed her suit against the four Defendants in their individual capacities. Her complaint alleged five counts: (1) unreasonable seizure against all Defendants, pursuant to § 1983; (2) defamation against Mr. Gilliland; (3) defamation against Ms. Casey; (4) malicious prosecution against all Defendants in violation of Alabama common law; and (5) malicious prosecution against Ms. Casey in violation of Alabama Rules of Professional Conduct 3.6 and 3.8(1)(a). (Garcia Doc. 18).

On January 18, 2019, Mr. Revill filed his suit against the four Defendants in their individual capacities. His complaint alleged 13 counts: (1) unlawful investigatory detention against Deputy Ashworth and Deputy Ratliff in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (2) unlawful investigatory detention against Ms. Casey and Mr. Gilliland in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (3) unlawful arrest against Deputy Ashworth and Deputy Ratliff in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (4) unlawful arrest against Ms. Casey and Mr. Gilliland in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (5) false imprisonment against Deputy Ashworth and Deputy Ratliff in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (6) unlawful detention following arrest against Ms. Casey and Mr. Gilliland in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (7) malicious prosecution against all Defendants in violation of the Fourth and Fourteenth Amendments, pursuant to § 1983; (8) malicious prosecution against all Defendants in violation of state law; (9) false imprisonment against Ms. Casey and Mr. Gilliland in violation of

Alabama Code § 6-5-170; (10) defamation against Ms. Casey; (11) defamation against Mr. Gilliland; (12) invasion of privacy—false light against Ms. Casey and Mr. Gilliland; and (13) wrongful interference with business relationships against Ms. Casey and Mr. Gilliland. (Revill Doc. 1).

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

But in this case, the Defendants do not attack the sufficiency of the Plaintiffs' factual allegations. Instead, Defendants' motions to dismiss assert legal defenses under various immunity doctrines. So the court must also consider the standard of review under each immunity raised.

<u>Prosecutorial Immunity</u>

The Supreme Court has held that absolute immunity exists for prosecutors in a § 1983 action. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that a person is immune from a civil § 1983 action arising from his action initiating or presenting the state's case). However, prosecutorial immunity depends on the prosecutor's function. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). A prosecutor is not immune from prosecution for all acts, but only for those acts "connected with the prosecutor's role in judicial proceedings." *Burns v. Reed*, 500 U.S. 478, 494–95 (1991). These acts include the pursuit of criminal prosecution and court appearances. *See Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002). But this immunity does not extend to actions taken in an investigative capacity that does not further some aspect of judicial proceedings. *See Buckley*, 509 U.S. at 273 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.").

Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual capacity suits *unless* the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

"The applicability of qualified immunity is a question of law to be decided by the court." *Willingham v. Loughnan*, 261 F.3d 1178, 1184 (11th Cir. 2001). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary

authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. A two-prong test determines whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the *Saucier* analysis may be performed in any order). First, the court asks whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier*, 533 U.S. at 201). Second, "[i]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Gonzalez*, 325 F.3d at 1234.

A right is clearly established when "the law at the time of an incident [provided] 'fair warning' to the defendants that their alleged conduct was unconstitutional." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015). In the Eleventh Circuit, the court considers only binding precedent to create clearly established law. *See Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013) ("[The court] look[s] only to binding precedent—holdings of cases drawn from the United States Supreme Court, this Court, or the highest court of the state where the events took place.").

The court acknowledges that qualified immunity is defense not merely from liability, but from suit. *See Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004) ("The defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery."). So, the court should resolve questions of qualified immunity "at the earliest

possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). A plaintiff's claim can survive qualified immunity raised in a motion to dismiss if "the plaintiff's allegations state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). But "the defendant is entitled to *summary judgment* if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.* (emphasis added). So, even if Plaintiffs' allegations state a claim for violations of clearly established law, such a ruling would not preclude Ms. Casey and Mr. Gilliland from reasserting qualified immunity at the summary judgment stage.

State-Agent Immunity

Under Alabama's state-agent immunity doctrine:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . .
>
> (2) exercising his or her judgment in the administration of a department or agency of government [or] . . .
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons . . . .
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000); *Ex parte Butts*, 775 So. 2d 173, 177–78 (Ala. 2000) (majority of court adopting *Cranman* restatement). The *Cranman* restatement of

state-agent immunity includes all circumstances entitling officers to immunity under Alabama Code § 6-5-338(a). *See Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006).

The test for state-agent immunity is analogous to federal qualified immunity. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir. 2010). "If the State agent makes such a showing [of state-agent immunity], the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).

## Judicial Immunity

Judicial and quasi-judicial immunity provide immunity from a suit in its entirety—litigation as well as liability. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Two principles limit judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's official capacity," and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12. But a defendant may still have quasi-judicial immunity, even if he is not a judge, if his official duties are sufficiently related to the judicial process. *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994).

Absolute quasi-judicial immunity develops from judicial immunity. A nonjudicial official obtains the protection of judicial immunity when his official duties "have an integral relationship with the judicial process." *Id.* (quoting *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)). A law enforcement officer "acting in furtherance of [his] official duties and relying on a facially valid court order" is entitled to quasi-judicial immunity from a § 1983 action. *Id.* at 556.

## Sovereign Immunity

As a sovereign, the United States is immune from suit unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Similarly, the Eleventh Amendment cloaks

states with immunity from suit in federal court without their consent. *See Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016). This immunity also protects state officials sued in their official capacity. *See id.* ("A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity."). Alabama has not waived its Eleventh Amendment immunity. *See Lancaster v. Monroe City*, 116 F.3d 1419, 1429 (11th Cir. 1997), *abrogated on other grounds by Lake v. Skelton*, 840 F.3d 1334 (11th Cir. 2016).

### III. Discussion

Ms. Casey and Mr. Gilliland both move to dismiss Mr. Revill's and Ms. Garcia's complaints under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted based on various immunity defenses.[3] These forms of immunity include qualified immunity, prosecutorial immunity, state-agent immunity, judicial or quasi-judicial immunity, and sovereign immunity.

As an initial matter, the court notes that Ms. Casey and Mr. Gilliland make two arguments in their reply brief to Ms. Garcia's complaint that they never raised in their initial motion to dismiss. Specifically, Defendants contend that harm to reputation alone is insufficient to raise a § 1983 claim for defamation and that expression in public places receives additional First Amendment protection. (Garcia Doc. 33 at 5–6). But a party cannot raise new arguments in a reply brief without affording the opposing party an opportunity to respond. *See Cost Recovery Servs. LLC v. Alltell Commc'ns, Inc.*, 259 F. App'x 223, 226 (11th Cir. 2007) (holding that a party cannot raise a new argument or evidence in a reply brief to a motion for summary

---

[3] Ms. Casey and Mr. Gilliland's motion to dismiss Ms. Garcia's complaint also argues that the complaint must be dismissed pursuant to Rule 12(b)(1), but the accompanying brief makes no argument or mention of Rule 12(b)(1). (Garcia Docs. 25–26).

judgment without giving the non-movant an opportunity to respond); *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (holding that the district court erred when the defendants presented new evidence in a reply brief and the district court denied the plaintiffs' motion to strike and plaintiffs' surreply). Because Ms. Garcia did not have an opportunity to respond to these arguments, the court will not consider them now.

The court will now discuss each of the five immunity defenses Defendants raised in their initial motions to dismiss.

### a. Prosecutorial immunity

First, Ms. Casey and Mr. Gilliland contend that Ms. Garcia's and Mr. Revill's suits are barred by the doctrine of absolute prosecutorial immunity. After providing the court with a summary on the importance of prosecutorial immunity, the Defendants conclude that "[a]bsolute immunity applies in this case given the fact that the Plaintiffs['] vague and unsupported claims against the DA and the Assistant DA unquestionably fall within the band of prosecutorial immunity." (Revill Doc. 2 at 13; Garcia Doc. 26 at 13).

Defendants fundamentally misunderstand the purpose of prosecutorial immunity. This absolute immunity protects prosecutors in their *prosecutorial* functions only, and not in their *investigative* functions, so long as the investigative functions are not directly related to judicial proceedings. As explained by the Supreme Court, the immunity protects "activities . . . intimately associated with the judicial phase of the criminal process," and *not* "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430–31. Further, a difference exists "between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, . . . and the detective's role in searching for the clues and corroboration

that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273.

The Supreme Court explicitly held that providing legal advice to a police officer, such as whether probable cause for arrest exists, is *not* a prosecutorial function. *See Burns*, 500 U.S. at 495. Instead, such an act is investigatory and thus not subject to prosecutorial immunity. That the individual arrested was ultimately prosecuted does not bring the legal advice under the protection of prosecutorial immunity. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retroactively described as 'preparation' for a possible trial." *Buckley*, 509 U.S. at 276. To allow an eventual trial to immunize the advice to arrest would cause a prosecutor to "shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Id.*

The impetus of prosecutorial immunity is to prevent prosecutors from failing to prosecute individuals for fear that they may in turn be sued for malicious prosecution. *See Imbler*, 424 U.S. at 423. The courts are concerned that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.*

Plaintiffs' allegations include some actions that were prosecutorial and some that were not. Plaintiffs' claims against Defendants for malicious prosecution—Counts Four and Five of Ms. Garcia's complaint and Counts Seven and Eight of Mr. Revill's complaint—involved Defendants' prosecutorial decisions and thus are barred by prosecutorial immunity. *See Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002).

Regardless of the motivation behind Ms. Casey and Mr. Gilliland's prosecution of Plaintiffs, they are protected by prosecutorial immunity. *See Imbler*, 424 U.S. at 423 ("In this instance it has been thought in the end better to leave undressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949 (1950))). So, the court must DISMISS Ms. Garcia's Counts Four and Five and Mr. Revill's Counts Seven and Eight.

But Ms. Garcia and Mr. Revill also raise claims unrelated to Defendants' conduct regarding prosecution. In Count One, Ms. Garcia alleges that Defendants violated her constitutional right by subjecting her to an unreasonable seizure through their participation in her arrest without probable cause and without a warrant. This count rests upon Ms. Garcia's belief that Ms. Casey and/or Mr. Gilliland discussed on the phone with Deputy Ashworth whether probable cause existed to arrest her and Mr. Revill. And, as explained in *Burns*, no prosecutorial immunity extends to the provision of legal advice. Defendants on reply contend that this argument bears no weight because Ms. Garcia could not hear the other side of the phone call. But whether Ms. Garcia *correctly* described the situation is not the question. Instead, the question is whether, accepting Ms. Garcia's allegations as true, the allegations describe a prosecutorial action. And Ms. Garcia's allegation that Defendants provided legal advice about the arrest is not prosecutorial. *See Rowe*, 279 F.3d at 1280. So prosecutorial immunity does not bar Ms. Garcia's Count One.

In Count Two, Ms. Garcia alleges defamation of her by Mr. Gilliland for his public statement regarding her alleged possession of child pornography; in Count Three, Ms. Garcia alleges defamation by Ms. Casey for her public statement regarding Ms. Garcia's alleged

concealment of child pornography. Mr. Revill raises the same claims in Count Eleven and Count Ten, respectively. Mr. Gilliland's statement that Plaintiffs were knowingly in possession of child pornography bore no relationship to Mr. Gilliland's functions as a prosecutor or the judicial process.

The Supreme Court has also held that, when a prosecutor makes statements to the media regarding a case or holds a press conference, the prosecutor acts as an ordinary executive official who deals with the press and not as a prosecutor. *See Buckley*, 509 U.S. at 277–78 ("Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor."). Therefore, Ms. Casey's comments to AL.com were not related to her role as a prosecutor. And prosecutorial immunity will not bar Mr. Revill's Counts Ten or Eleven. So, prosecutorial immunity also will not bar Ms. Garcia's Count Two.

Mr. Revill asserts several claims all based upon Ms. Casey and Mr. Gilliland's alleged legal advice by directing Deputy Ashworth and Deputy Ratliff to arrest him: (1) Count Two for deprivation of his Fourth Amendment right to be free from unreasonable seizures; (2) Count Four for deprivation of his Fourth Amendment right to be free from arrest without a warrant or probable cause; (3) Count Six for unlawful detention following arrest; and (4) Count Nine for false imprisonment. He contends that Ms. Casey and Mr. Gilliland instructed Deputy Ashworth to arrest him if he refused to produce the cell phones from Ms. Garcia's satchel. And, he alleges he was detained without a warrant at the Blount County Jail for four hours before his release on bond. Like Ms. Garcia's Count One, these claim are all about alleged legal advice provided to Deputy Ashworth, and legal advice is not protected by prosecutorial immunity. So, prosecutorial immunity will not bar Mr. Revill's Counts Two, Four, Six, and Nine.

Regarding Mr. Gilliland's and Ms. Casey's statements about Mr. Revill's alleged association with child pornography, Mr. Revill also alleges Count Twelve for invasion of privacy—false light. Again, these allegations regard the statements Ms. Casey and Mr. Gilliland made outside of their prosecutorial duties. So, prosecutorial immunity will not bar Mr. Revill's Count Twelve.

Finally, Count Thirteen of Mr. Revill's complaint alleges that Ms. Casey and Mr. Gilliland wrongfully interfered with his business relationships "by making allegedly false and defamatory statements in the news media impugning Plaintiff's reputation as an attorney, alleging that he intentionally concealed evidence of child pornography from law enforcement, and attempting to manipulate the judicial process and criminal justice system." (Revill Doc. 1 at 35–36). This count walks the line between defamation and malicious prosecution because the count is based on both statements and the Defendants' decision to prosecute Mr. Revill. To the extent that this claim is based on Ms. Casey and Mr. Gilliland's prosecution of Mr. Revill, prosecutorial immunity bars this claim. But to the extent that this claim is based on the Defendants' defamatory remarks, prosecutorial immunity will not apply.

So, the court will GRANT Defendants' motions to dismiss on the ground of prosecutorial immunity as to Counts Four and Five of Ms. Garcia's complaint and as to Counts Seven and Eight of Mr. Revill's complaint. The court will DENY Defendants' motions to dismiss as to all other counts on the ground of prosecutorial immunity.

### b. Qualified immunity

Second, Ms. Casey and Mr. Gilliland contend that they are entitled to protection under qualified immunity. Qualified immunity protects government officials performing discretionary

functions from individual capacity suits unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739.

First, the government official must establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred to trigger the protection. *See Lee*, 284 F.3d at 1194. Ms. Garcia and Mr. Revill both alleged that Ms. Casey and Mr. Gilliland were acting within the scope of their discretionary authority as Blount County District Attorneys at all relevant times. (Garcia Doc. 18 at 2; Revill Doc. 1 at 10). Defendants do not disagree.

Because the Defendants showed that they were acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."). *Lee*, 284 F.3d at 1194. Plaintiffs must demonstrate that (1) Defendants violated Plaintiffs' constitutionally protected rights, *and* (2) the constitutional right was clearly established at the time of Defendants' actions. *See Pearson*, 555 U.S. at 232 ("First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." (internal citations omitted)).

At the heart of Plaintiffs' complaints are allegations of Fourth Amendment violations. Plaintiffs allege that Ms. Casey and/or Mr. Gilliland instructed Deputy Ashworth and Deputy Ratliff to arrest Plaintiffs without probable cause in violation of the Fourth Amendment. While Defendants dispute whether Ms. Casey and/or Mr. Gilliland were actually on the other end of the phone call to Deputy Ashworth, at the motion to dismiss stage, the court must accept Plaintiffs' allegations as true. *See Iqbal*, 556 U.S. at 678. The Fourth Amendment prohibits the search or seizure of people without warrants based upon probable cause. U.S. Const., amend. IV. And the

Supreme Court has held that a person cannot be arrested without a warrant if no probable cause exists. *See United States v. Watson*, 423 U.S. 411 (1976).

Plaintiffs contend that no probable cause existed because they did not interfere with the execution of Defendants' search warrant for Mr. Edwards's person and vehicle. Instead, they held Mr. Edwards's cell phones—which Mr. Edwards gave to Ms. Garcia prior to any knowledge of the warrant. And Plaintiffs assert the phones are privileged documents within the attorney-client relationship. Plaintiffs did not flee or physically interfere with Deputy Ashworth or Deputy Ratliff; Plaintiffs merely refused to consent to the seizure of Mr. Edwards's cell phones that went beyond the reach of the warrant. Defendants offer no counterargument regarding why probable cause existed to arrest Plaintiffs. So, Plaintiffs have demonstrated that Defendants plausibly violated their Fourth Amendment rights.

The court must now consider whether that right was clearly established at the time of Defendants' actions. For law to be clearly established, "the law at the time of an incident [must have provided] 'fair warning' to the defendants that their alleged conduct was unconstitutional." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015). In the Eleventh Circuit, the court considers only binding precedent to create clearly established law. *See Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013) ("[The court] look[s] only to binding precedent—holdings of cases drawn from the United States Supreme Court, this Court, or the highest court of the state where the events took place.").

Ms. Casey and Mr. Gilliland claim that no binding applicable decision clearly states that their actions violated the Fourth or Fourteenth Amendments. The court directs Defendants to the text of the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. Without even looking to a binding applicable decision, Defendants' conduct, as alleged by Plaintiffs, violates the Fourth Amendment because, as Plaintiffs allege, Defendants seized Plaintiffs without a warrant particularly authorizing the search or seizure of Plaintiffs. No reading of the Fourth Amendment authorizes an official to use a warrant for the search of *another* person to arrest a *different* individual not interfering in the search of the person listed on the warrant. A warrantless search presumptively violates the Fourth Amendment unless some exception applies. *See Payton v. New York*, 445 U.S. 573, 585 (1980) ("Unreasonable searches or seizures conducted without any warrant at all are condemned by the plain language of the first clause of the [Fourth] Amendment.").

The court need not find a factually similar case that has found the defendant's actions unconstitutional. "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instance a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (quoting *Anderson*, 483 U.S. at 640); *see also Anderson*, 483 U.S. at 640 (Daughtrey, J., dissenting) ("The easiest cases don't even arise.").

The Supreme Court has held that "[w]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978)). And the government "bear[s] a heavy burden . . . when attempting to

demonstrate an urgent need that might justify warrantless searches." *Kentucky v. King*, 563 U.S. 452, 474 (2011) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984)).

Defendants rely upon *Holden v. Stitcher*, 429 F. App'x 749 (11th Cir. 2001), to support their argument that prosecutors are entitled to qualified immunity for providing legal advice to law enforcement. But in *Holden*, the court based its holding on the plaintiff's failure to specify how the prosecutor's legal advice or involvement in the plaintiff's arrest could strip the prosecutor of qualified immunity. In contrast, in the case at hand, Plaintiffs do explain why Ms. Casey's and/or Mr. Gilliland's actions violated Plaintiffs' Fourth Amendment rights contrary to clearly established law: Ms. Casey and/or Mr. Gilliland allegedly instructed Deputy Ashworth and Deputy Ratliff to arrest Plaintiffs, even in the absence of a warrant or probable cause. So *Holden* is inapplicable to this case.

Because Plaintiffs sufficiently allege that Ms. Casey and Mr. Gilliland violated Plaintiffs' Fourth Amendment rights contrary to clearly established law, Ms. Casey and Mr. Gilliland are not entitled to qualified immunity for Plaintiffs' Fourth Amendment claims at the motion to dismiss stage.

Plaintiffs raise more than Fourth Amendment claims. Plaintiffs also allege that Ms. Casey and Mr. Gilliland defamed Plaintiffs. And Mr. Revill alleges that Defendants falsely imprisoned him, invaded his privacy, and wrongfully interfered with his business relationships. However, because these claims are brought under state law and not federal law, no qualified immunity attaches. *See Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) ("[Qualified immunity] protect[s] from suit all but the plainly incompetent or one who is knowingly violating the *federal* law." (quoting *Lee*, 284 F.3d at 1194 (emphasis added))). So, Defendants' arguments that

Plaintiffs failed to assert clearly established law for any of those claims have no bearing because Defendants are not entitled to qualified immunity for violations of state law.

Thus, the court will DENY Ms. Casey and Mr. Gilliland's motions to dismiss on the ground of qualified immunity.

### c. State-agent immunity

Regarding Plaintiffs' state claims, Ms. Casey and Mr. Gilliland argue that they are entitled to state-agent immunity because they acted "under color of state law . . . [and] were each exercising their judgment in executing their work responsibilities." (Garcia Doc. 26 at 17 and Revill Doc. 2 at 18.) The court finds that this assertion, which constituted Defendants' complete argument on the matter, fails to demonstrate that Defendants qualify for state-agent immunity.

The Alabama Supreme Court has held that because ascertaining state-agent immunity is often a fact-intensive inquiry, a motion for summary judgment, not a motion to dismiss, typically provides the proper vehicle through which to assert a state-agent immunity defense. *See Ex parte Ala. Dep't of Mental Health & Mental Retardation*, 837 So. 2d 808, 814 (Ala. 2002) ("It is the rare case involving the defense of [s]tate-agent immunity that would be properly disposed of by a dismissal.") The instant case follows the rule rather than any exception.

Alabama's state-agent immunity bears similarities with federal qualified immunity. But where a defendant raising qualified immunity must first show that he was "acting within the scope of his discretionary authority," *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991), state-agent immunity "simplif[ies] the analysis" by enumerating "certain categories of [s]tate-agent action where agents are immune in the exercise of their judgment." *Ex parte Hudson*, 866 So. 2d 1115, 1117 (Ala. 2003).

The Alabama Supreme Court conveniently created a list of the general categories of functions that qualify for state-agent immunity. *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). The Alabama Supreme Court determined that a state agent gains immunity if he is

> (1) formulating plans, policies, or designs; or
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
> > (a) making administrative adjudications;
> > (b) allocating resources;
> > (c) negotiating contracts;
> > (d) hiring, firing, transferring, assigning, or supervising personnel; or
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Ex parte Cranman*, 792 So. 2d at 405. This list, though non-exhaustive, provides the starting point from which a defendant raising the state-agent defense must begin. *Hollis v. City of Brighton*, 950 So. 2d 300, 307 (Ala. 2006).

If a defendant can demonstrate that he engaged in one of these types of functions, "the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Estate of Reynolds*, 946 So. 2d at 452. But the timing of the burden-shifting mechanism is important. Only *after* the defendant makes such a showing does the burden shift back to the plaintiff.

Here, Defendants argue that they "exercised judgment" and "acted under color of state law in the course and scope of their employment as District Attorney and Assistant District Attorney at all times." (Garcia Doc. 26 at 17.) But these general assertions do not expressly link any of Defendants' actual behaviors to any type of immune function mentioned by the Alabama

Supreme Court in *Cranman*. Because Defendants do not allege that their actions fell within one of these categories, they have not met their burden to demonstrate that they qualify for state-agent immunity.

The court will DENY Defendants' motions to dismiss on the ground of state-agent immunity.

### d. Judicial immunity

Only in their motion to dismiss Ms. Garcia's complaint do Defendants raise judicial or quasi-judicial immunity. Similarly to prosecutorial immunity, quasi-judicial immunity extends absolute immunity to "[n]onjudicial officials . . . when their official duties 'have an integral relationship with the judicial process.'" *Roland*, 19 F.3d at 555 (quoting *Ashbrook*, 617 F.2d at 476). The Eleventh Circuit applies a functional test to determine whether a nonjudicial official is acting in relation to the judicial process. *See id.* ("Thus, we determine the absolute quasi-judicial immunity of a nonjudicial official through a *functional* analysis of the action taken by the official in relation to the judicial process.").

In *Roland*, the Eleventh Circuit explained that a law enforcement officer, relying on a facially valid court order, is entitled to quasi-judicial immunity when acting in furtherance of his official duties under that court order. *Roland*, 19 F.3d at 556. The court extended that protection because "[l]aw enforcement officials 'must not be called upon to answer for the legality of decisions which they are powerless to control' or 'be required to act as pseudo-appellate courts scrutinizing the orders of judges.'" *Id.* (quoting *Valdez v. Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989)).

Applying this logic, Ms. Casey's and Mr. Gilliland's actions, to the extent they were acting in furtherance of their official duties and relying on a facially valid court order, would be

protected by quasi-judicial immunity. But not all of the Defendants' alleged actions were taken in furtherance of their official duties or in reliance on a facially valid court order. Mr. Gilliland's public remark that Plaintiffs possessed a cell phone containing child pornography and Ms. Casey's statement that Plaintiffs knowingly concealed evidence of child pornography certainly did not further their official duties because "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Buckley*, 509 U.S. at 277–78.

Yet Count One of Ms. Garcia's complaint for unreasonable seizure presents a more interesting argument. A valid search warrant existed for Mr. Edwards's person and vehicle. But Ms. Garcia was arrested and detained for obstructing governmental operations because she did not turn over Mr. Edwards's cell phone placed in *her* possession before any notice of a warrant. Facially, the warrant did not authorize a search of Ms. Garcia or her satchel.

However, "the mere fact that a judicial order does not explicitly authorize an arrest does not mean that the arrest itself extends beyond the scope of the order." *Dawson v. Jackson*, No. 2:16-cv-01738-RDP, 2017 WL 3620254, at *4 (N.D. Ala. Aug. 23, 2017). One of this court's colleagues held that an arresting officer was protected by quasi-judicial immunity when he detained an individual who obstructed him from effectuating a facially valid court order. *Id.* Even assuming that this logic extends to protect the prosecutor who offered legal advice to the arresting officer, Ms. Garcia in no way interfered with the officer's execution of the warrant as to Mr. Edwards's person or vehicle. Ms. Garcia only refused to turn over Mr. Edwards's cell phones that were in her possession prior to the execution of the warrant. Because Ms. Casey and Mr. Gilliland did not instruct the arresting officers to detain Ms. Garcia in furtherance of a valid court order, Ms. Casey and Mr. Gilliland are not protected by quasi-judicial immunity for their role in the alleged unreasonable seizure of Ms. Garcia.

So, the court will DENY Defendants' motion to dismiss Ms. Garcia's complaint on the ground of judicial or quasi-judicial immunity. (Garcia Doc. 25).

### e. Sovereign immunity

Defendants also raise sovereign immunity under the Eleventh Amendment only in their motion to dismiss Ms. Garcia's complaint. True, the Eleventh Amendment's extension of sovereign immunity to the states bars suits in federal court against state officials sued in their *official* capacities. *See Melton*, 841 F.3d at 1233 ("A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity."). But Ms. Garcia's complaint explicitly states that Ms. Casey and Mr. Gilliland—and Deputy Ashworth and Deputy Ratliff, for that matter—are *only* sued in their *individual* capacities. (Doc. 18 at 2). The Eleventh Amendment does not apply here because Eleventh Amendment immunity does not extend to state officials sued in their individual capacities. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").

So, the court DENIES Ms. Casey and Mr. Gilliland's motion to dismiss Ms. Garcia's complaint on the ground of sovereign immunity. (Doc. 25).

## IV. Conclusion

For the reasons discussed above, the court will GRANT IN PART and DENY IN PART Pamela Casey's and Scott Gilliland's motions to dismiss. (Garcia Doc. 25; Revill Doc. 2). The court will GRANT the motion to dismiss Ms. Garcia's complaint as to her malicious prosecution claims (Count Four against Mr. Gilliland and Ms. Casey and Count Five against Ms. Casey) (Garcia Doc. 25). The court will also GRANT the motion to dismiss Mr. Revill's complaint as to

his malicious prosecution claims (Counts Seven and Eight, both as to Ms. Casey and Mr. Gilliland) (Revill Doc. 2). The court will DENY Defendants' motions to dismiss all other Counts.

The court will DISMISS WITH PREJUDICE Counts Four and Five of Ms. Garcia's complaint and Counts Seven and Eight of Mr. Revill's complaint because Ms. Casey and Mr. Gilliland are entitled to absolute prosecutorial immunity against suits for malicious prosecution.

As to Ms. Garcia's complaint, Count One remains against all four Defendants; Count Two remains against Mr. Gilliland; and Count Three remains against Ms. Casey.

As to Mr. Revill's complaint, the following claims remain: Count One against Deputy Ashworth and Deputy Ratliff, Count Two against Ms. Casey and Mr. Gilliland, Count Three against Deputy Ashworth and Deputy Ratliff, Count Four against Ms. Casey and Mr. Gilliland, Count Five against Deputy Ashworth and Deputy Ratliff, Count Six against Ms. Casey and Mr. Gilliland, Count Seven against Deputy Ashworth and Deputy Ratliff, Count Nine against Ms. Casey and Mr. Gilliland, Count Ten against Ms. Casey, Count Eleven against Mr. Gilliland, Count Twelve against Ms. Casey and Mr. Gilliland, and Count Thirteen against Ms. Casey and Mr. Gilliland.

The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 12th day of February, 2020.

_Karon O. Bowdre_
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE