# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MEGAN GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-CV-02079-KOB |
| | ) | |
| PAMELA CASEY, SCOTT GILLILAND, SUE ASHWORTH, and BRIAN K. RATLIFF, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| VICTOR REVILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-CV-00114-KOB |
| v. | ) | |
| | ) | |
| PAMELA CASEY, SCOTT GILLILAND, SUE ASHWORTH, and BRIAN K. RATLIFF, | ) ) ) | |
| | ) | **THIS DOCUMENT RELATES TO BOTH CASES** |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendants Sue Ashworth's and Brian Ratliff's motions to dismiss. (Garcia Doc. 21; Revill Doc. 9).[1] This consolidated action stems from the events of February 23, 2017, when Plaintiffs Megan Garcia and Victor Revill, both lawyers, refused to consent to a search by two Blount County sheriff deputies—Defendants Deputy

---

[1] To prevent confusion regarding the two docket sheets for these consolidated cases, the court uses "Garcia Doc." to refer to docket entries in the case filed by Megan Garcia, 2:18-CV-02079-KOB, and will use "Revill Doc." to refer to docket entries in the case filed by Victor Revill, 2:19-CV-00114-KOB.

Ashworth and Deputy Ratliff. All parties submitted briefs to the court regarding Defendants' motions to dismiss (Revill Docs. 18, 20; Garcia Docs. 32, 35). After considering the parties' arguments, and for the reasons explained below, the court will GRANT in part and DENY in part Defendants' motions to dismiss.

   I. Background

On February 23, 2017, Ms. Garcia and Mr. Revill were representing their client, Mr. Edwards, in Blount County state court to oppose a protection-from-abuse order sought by Mr. Edwards's wife. Before the hearing, Mr. Edwards told his attorneys that he received explicit pictures and videos from his wife after she filed for protection from abuse. After the hearing, Mr. Edwards handed to Ms. Garcia two out-of-service cell phones that contained the pictures and videos sent by Mr. Edwards's wife. Ms. Garcia put both phones in her satchel so that she and Mr. Revill could later retrieve the videos and images.

Just as Ms. Garcia, Mr. Revill, and Mr. Edwards stepped outside the courthouse, Deputies Ashworth and Ratliff confronted Ms. Garcia, Mr. Revill, and Mr. Edwards with a warrant to search Mr. Edwards's person and vehicle. Mr. Revill reviewed the warrant, then instructed Mr. Edwards to consent to the search. After searching Mr. Edwards and his car, Deputy Ashworth demanded that Mr. Revill produce the two cell phones; Deputy Ashworth had apparently seen via closed-circuit television inside the courthouse a live feed of Mr. Edwards giving Ms. Garcia the phones. Mr. Revill did not consent because the search warrant did not extend to Ms. Garcia or her satchel. Neither Deputy Ashworth nor Deputy Ratliff spoke directly to Ms. Garcia.

Deputy Ashworth then told Mr. Revill that she would detain him and Ms. Garcia until she and Deputy Ratliff could "determine the next course of action." (Garcia Doc. 18 at 4.) Deputy

2

Ashworth then allegedly called Blount County District Attorney Pamela Casey and/or Assistant District Attorney Scott Gilliland. Deputy Ashworth explained that she saw Mr. Edwards hand the phones to his attorneys. After that phone call, Deputy Ashworth told Mr. Revill that "we either need the phone out of the satchel or we will have to detain you and get a search warrant to get the phone." (*Id.*). Deputy Ashworth then made another call, allegedly to Ms. Casey. Plaintiffs believe that Ms. Casey instructed Deputy Ashworth to arrest Ms. Garcia and Mr. Revill because, immediately following the call, Deputy Ashworth and Deputy Ratliff arrested Plaintiffs for obstructing government operations.

Plaintiffs remained handcuffed outside the courthouse in public for approximately 30 minutes; they were then taken to Blount County Jail and booked. They remained in custody for approximately four hours before being released after paying a $3,000 bond each. When released, they were informed that they were charged with obstruction of governmental operations and refusing to permit inspection.

In the application for the arrest warrant, Deputy Ashworth averred that she "was attempting to serve a search warrant on Lloyd Clinton Edwards. Victor Revill and Megan Garcia were in possession of an item subject to the search warrant and refused to hand over said item." (Garcia Doc. 18 at 6.) But the search warrant only stated that Mr. Edwards's person and vehicle were subject to search.

On March 29, 2018, temporary district attorneys prosecuted Plaintiffs for obstructing governmental operations, in violation of Alabama Code § 13A-10-2, and refusal to permit inspection, in violation of Alabama Code § 13A-10-3. At the close of the prosecution's case, the court granted both Plaintiffs' motions for judgment of acquittal.

On December 18, 2018, Ms. Garcia filed her suit against both Defendants in their individual capacities. Her complaint alleged two counts: (1) unreasonable seizure in violation of the Fourth Amendment and (2) malicious prosecution in violation of Alabama law. (Garcia Doc. 18.)

On January 18, 2019, Mr. Revill filed his suit against both Defendants in their individual capacities. His complaint alleged five counts: (1) unlawful investigatory detention in violation of the Fourth and Fourteenth Amendments (2) unlawful arrest in violation of the Fourth and Fourteenth Amendments, (3) false imprisonment in violation of the Fourth and Fourteenth Amendments, (4) malicious prosecution in violation of the Fourth and Fourteenth Amendments, and (5) malicious prosecution in violation of Alabama law.[2]

Deputies Ashworth and Ratliff jointly filed motions to dismiss in both cases. The two motions are substantively similar and raise the same two arguments to support dismissal: absolute state immunity and qualified immunity.

**II. Standard of Review**

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting

---

[2] In the accompanying case, District Attorney Pamela Casey and Assistant District Attorney Scott Gilliland also filed motions to dismiss in both cases. (Garcia Doc. 25; Revill Doc. 2.) The court considered these motions to dismiss in a separate memorandum opinion (Revill Doc. 31.) Mr. Revill's Complaint (Revill Doc. 1) includes a total of 13 claims against all four Defendants: Deputies Ashworth and Ratliff and District Attorneys Casey and Gilliland. But for the sake of simplicity, the court in this memorandum opinion has re-numbered the five claims relevant to the two Deputy Defendants. Likewise, Ms. Garcia's Amended Complaint (Garcia Doc. 18) included five counts, and the court has extracted and re-numbered the two counts relevant to the instant motions to dismiss.

Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

### III. Discussion

Defendants' motions to dismiss primarily assert two immunity doctrines: qualified immunity and state absolute immunity (known formerly as sovereign immunity, *Ex parte Purvis*, 689 So. 2d 794, 795 (Ala. 1996)). Defendants also challenge the facial sufficiency of Mr. Revill's malicious prosecution and unlawful detention claims. The court addresses each argument below.

#### a. *Qualified Immunity*

Deputies Ashworth and Ratliff assert that qualified immunity precludes all of Plaintiffs' federally based claims (Garcia Count 1; Revill Counts 1, 2, 3, and 4). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). Qualified immunity protects officials from individual-capacity suits unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

5

Whether an officer is entitled to qualified immunity is a legal question to be decided by the court. *Willingham v. Loughnan*, 261 F.3d 1178, 1184 (11th Cir. 2001). The court should resolve questions of qualified immunity "at the earliest possible stage of a litigation," *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987), but a plaintiff's claim can survive qualified immunity raised in a motion to dismiss if "the plaintiff's allegations state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

A defendant who raises a qualified immunity defense bears the initial burden of demonstrating that he acted within the scope of his discretionary authority when he took the allegedly unconstitutional action. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). If the defendant makes this showing, the burden shifts to the plaintiff to show that (1) the alleged facts demonstrate a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct. *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016).

Regarding the initial burden, the parties here appear to agree that Deputies Ashworth and Ratliff acted within the scope of their discretionary authority when they arrested Plaintiffs. Plaintiffs' briefs do not contest the issue and their complaints strongly suggest as much. *See* Garcia Doc. 18 at 2 ("Defendants . . . were at all times relevant to this action Blount County deputy sheriffs acting under color of state law"); (Revill Doc. 1 at 10) ("At all relevant times . . . Defendants were acting within the scope of their discretionary authority as Blount County sheriff's deputies."). At the time they allegedly violated Plaintiffs' rights, Deputies Ashworth and Revill attempted to execute a search warrant and arrested Plaintiffs. These types of behaviors fall squarely within the discretionary role of sheriffs' deputies, pursuant to Ala. Code § 36-22-3(a)(4): "It shall be the duty of the sheriff . . . [t]o, with the assistance of deputies as necessary,

ferret out crime, [and] apprehend and arrest criminals." Defendants have met the threshold burden of showing they acted within their discretionary authority.

The burden then shifts to Plaintiffs to establish both that (1) Defendants violated Plaintiffs' constitutionally protected rights, and (2) the constitutional right was clearly established at the time of Defendants' actions. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The U.S. Supreme Court has held that district courts may analyze these two steps in any order, *id.* at 236, so the court will first look at whether the rights Defendants allegedly violated were clearly established when Defendants arrested Plaintiffs.

In the qualified immunity context, a right is clearly established when the law provides government officers with "fair warning" that their alleged conduct is unconstitutional. *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015). Put another way, clearly established rights are sufficiently well-known such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted). The Eleventh Circuit has held that a Plaintiff can prove that a right is clearly established in any of the following three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

Here, the court finds that Plaintiffs have shown that "a broad statement of principle within the Constitution"—specifically, the text of the Fourth Amendment that proscribes warrantless searches and seizures—"clearly establishes a constitutional right" in this case. *See id.* Plaintiffs allege that Deputies Ashworth and Ratliff seized Plaintiffs without probable cause in

violation of the Fourth Amendment. The Fourth Amendment, clearly established since its ratification in 1791, prohibits the search or seizure of people without warrants based upon probable cause. U.S. CONST., amend. IV. And the Supreme Court has held that a person cannot be searched or seized without a warrant if no probable cause exists. *See United States v. Watson*, 423 U.S. 411 (1976). Because reasonable law enforcement officers possess fair warning that the Fourth Amendment prohibits unreasonable seizures, Plaintiffs have plainly shown that the right they claim Defendants violated was clearly established when Defendants arrested Plaintiffs.

Having demonstrated that freedom from unreasonable seizures is a clearly established right, the next question is whether Deputies Ashworth and Ratliff violated that right by detaining Plaintiffs in handcuffs for 30 minutes on the courthouse steps and arresting them for refusing to hand over Mr. Edwards's cell phones. The answer to this question turns on whether Deputies Ashworth and Ratliff had arguable probable cause to detain Plaintiffs. *See Holmes v. Kucynda,* 321 F.3d 1069, 1079 (11th Cir. 2003) ("To receive qualified immunity protection, an officer need not have actual probable cause but only arguable probable cause") (citation omitted). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (11th Cir. 2018). And probable cause exists when, under a totality of the circumstances, a prudent officer would believe that a suspect has committed, is committing, or is about to commit a crime. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

Defendants contend that arguable probable cause existed to arrest Plaintiffs for violating Ala. Code § 13A-10-2. (Revill Doc. 10 at 11.) This statute holds that a person "commits the crime of obstructing governmental operations if, by means of intimidation, physical force or

8

interference or by any other independently unlawful act, he: (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or (2) Intentionally prevents a public servant from performing a governmental function." Ala. Code § 13A-10-2.

To support the assertion that arguable probable cause existed to arrest Plaintiffs for obstructing government operations, Defendants point both to the facts alleged in the complaints and the text of the warrant to search Mr. Edwards's person and vehicle. (Revill Doc. 10 at 12.) The complaints allege that Mr. Edwards handed Ms. Garcia two cell phones inside the courthouse and that, once Plaintiffs and Mr. Edwards stepped outside, Deputies Ashworth and Ratliff handed Mr. Edwards a warrant that entitled Defendants to search Mr. Edwards and his car. (Revill Doc. 1 at 4; Garcia Doc. 18 at 3.) The warrant did specify that "any and all cellular devices" could be seized. (Revill Doc. 10-1 at 2.)

After reviewing the search warrant, Plaintiffs told Mr. Edwards to comply with the warrant. Defendants then searched the person and vehicle of Mr. Edwards and, not finding everything they sought, told Plaintiffs they had seen closed-circuit video footage of Mr. Edwards handing Ms. Garcia two cell phones; they then demanded that Plaintiffs hand over the phones. (Garcia Doc. 18 at 3.) When Mr. Revill refused to voluntarily hand over the phones because the scope of the warrant did not include either Plaintiff, and that he considered the phones to be privileged work product, Deputy Ratliff informed Mr. Revill that the deputies were "going to detain [Plaintiffs] until we determine the next course of action." (Revill Doc. 1 at 5.)

According to the complaints, Defendants then called the district attorney's office at least twice. (Garcia Doc. 18 at 4.) After the last phone call, Defendants placed Plaintiffs under arrest for obstruction of government operations. According to the complaints, Plaintiffs were not aware of the existence of any warrant at the time Mr. Edwards gave Ms. Garcia the two cell phones,

9

and at no time did Plaintiffs interfere with Defendants' search of Mr. Edwards or Mr. Edwards's vehicle. Plaintiffs' alleged violation of Ala. Code § 13A-10-2 stemmed exclusively from their refusal to give Defendants the phones placed in their possession prior to the execution of the search warrant.

Based on these facts, Defendants argue that two factors support a finding of arguable probable cause to arrest Plaintiffs for obstructing government operations by "intentionally prevent[ing] a public servant from performing a governmental function." Ala. Code § 13A-10-2. First, the search warrant specified that Mr. Edwards's phones could be seized, and Plaintiffs had two of Mr. Edwards's phones. Second, Defendants sought approval from the district attorney's office before making the arrest. (Revill Doc. 10 at 12, 20–21.)

On the first point, the Fourth Amendment require that warrants must particularly describe *both* the place to be searched *and* the persons or things to be seized. U.S. CONST., amend. IV. No reasonable officer could be ignorant of the most basic of constitutional protections. *See Groh v. Ramirez*, 540 U.S. 551, 563–65 (2004) (declining to apply qualified immunity because "no reasonable officer" would be unaware of the Fourth Amendment's plain text).

Although Plaintiffs possessed two items specified in the warrant to search Mr. Edwards's person and vehicle, the fact that Ms. Garcia's satchel was in neither of these locations precluded the attempted government operation of expanding a search warrant beyond its stated scope. In light of the plain text of the Fourth Amendment, which clearly defines the extent of valid government operations in this context, the mere fact that Plaintiffs possessed the two phones lends no support for a finding of arguable probable cause that Plaintiffs obstructed government operations. Reasonable officers, quite simply, would have known better. *See Cozzi,* 892 F.3d at 1294 (holding that arguable probable cause does not exist when an officer, as alleged here,

10

"ignore[s] documentation" or "close[s] her or his eyes to facts that would help clarify the circumstances of an arrest.").

On the second point, the U.S. Supreme Court has held that the fact a law enforcement officer seeks guidance from his superiors regarding an arrest mitigates toward a finding that the officer behaved reasonably in determining probable cause. *Messerschmidt v. Millender*, 565 U.S. 535, 553–55 (2012). But at the same time, the Court in *Messerschmidt* held that, even when a law enforcement officer consults with his superiors, the officer retains at least a modicum of responsibility to know basic legal principles and behave reasonably. *See id.* at 547 (explaining that an officer behaves unreasonably when "it is obvious that no reasonably competent officer would have" done what the officer did).

Furthermore, a "pre-arrest consultation and advice of a district attorney [is] *one* circumstance contributing to the objective reasonableness of an officer's conduct. Indeed, it *may* be an important factor for a court to consider when the outcome in the qualified immunity case would otherwise be unclear." *Poulakis v. Rogers*, 341 F. App'x 523, 533 (11th Cir. 2009) (emphasis added). The alleged facts in the instant case are not particularly unclear. The complaints allege that Defendants consulted with the district attorney's office before arresting Plaintiffs. But, taking the facts of the complaint as true, Defendants behaved unreasonably by arresting Plaintiffs for refusing to turn over the phones when Plaintiffs bore no legal obligation to do so.

A colleague on this court contemplated a similar factual scenario in *Bey v. Abrams*, No. 7:14-cv-02205-RDP, 2015 U.S. Dist. LEXIS 80405, at *22 (N.D. Ala. June 22, 2015). In *Bey,* a plaintiff brought a Fourth Amendment claim against three law-enforcement officers who charged him with obstructing government operations and resisting arrest because he tried to close a door

11

on the three officers as they attempted to execute a valid arrest warrant on someone inside the plaintiff's house. The trial court denied the officers' motion to dismiss the claim on qualified immunity grounds and opined that "Plaintiff's factual allegations suggest that he was within his Fourth Amendment rights to refuse Defendant Officers' entry into his home. This raises an important question—how could Plaintiff be unlawfully resisting . . . arrest [or obstructing government operations] at the same time that he was lawfully exercising his Fourth Amendment rights[?]" *Id.*

The court here asks a similar question. How could Plaintiffs obstruct government operations by lawfully exercising their Fourth Amendment rights and refusing to consent to a search when the warrant did not apply to them? Because the answer is plain on its face, Defendants cannot show that they had arguable probable cause to arrest Plaintiffs. Without arguable probable cause, Defendants cannot support a qualified immunity defense *at this stage* of the proceedings.

The court will DENY Defendants' motions to dismiss Plaintiffs' federal claims (Garcia Count 1 and Revill Counts 1, 2, 3, and 4) on the grounds of qualified immunity.

    *b. State Absolute Immunity*

Both Ms. Garcia and Mr. Revill bring state malicious prosecution claims against both Defendants. (Garcia Count 2; Revill Count 5.) In their motions to dismiss, Defendants argue that state absolute immunity shields sheriffs' deputies from claims brought under state law. (Revill Doc. 10 at 24–27; Garcia Doc. 22 at 19–22.) Defendants are correct.

State absolute immunity is an Alabama constitutional doctrine. *See* ALA. CONST. Art. I, Sec. 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). State absolute immunity creates a "nearly impregnable and almost invincible wall that

provides the State an unwaivable, absolute immunity from suit . . . in any court." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006) (quotations omitted). This type of immunity applies to state officers sued in either their official or individual capacities for state-law causes of action. *Tinney v. Shores*, 77 F.3d 378, 382–83 (11th Cir. 1996); *Alexander v. Hatfield*, 652 So. 2d 1142, 1143–44 (Ala. 1994).

Because the State Constitution specifically lists county sheriffs as one of the nine enumerated state-executive offices, ALA. CONST. Art. V, § 112, sheriffs and their deputies enjoy even more expansive immunity from state claims than other, non-enumerated, officers of the state. *Ex parte Purvis*, 689 So. 2d 794, 796–97 (Ala. 1996). The Alabama Supreme Court has consistently held that sheriffs' deputies, both individually and in their official capacities, are immune from state claims arising from actions taken within the scope of their work. *Ex parte Donaldson*, 80 So. 3d 895, 897–98 (Ala. 2011).

Here, Ms. Garcia has conceded that state absolute immunity bars her state malicious prosecution claim. (Garcia Doc. 32 at 12.) Mr. Revill, meanwhile, appears confused about the type of immunity that Defendants raised in their motions dismiss. Instead of analyzing state absolute immunity, Mr. Revill's response brief discusses *state-agent* immunity—a completely different defense that neither Defendant mentioned in the motions to dismiss. (Revill Doc. 18 at 14–16.) But even if Mr. Revill had attempted to rebut Defendants' state absolute immunity defense, he would fail. At all relevant times, Deputies Ashworth and Ratliff were operating in the scope of their employment as officers of the State of Alabama, so their actions are shielded from suit by state absolute immunity.

The court will GRANT Defendants' motions to dismiss both Plaintiffs' state malicious prosecution claims. (Garcia Count 2; Revill Count 5.)

### c. Facial Sufficiency Arguments

Although Defendants exert most of their energies presenting affirmative defenses, they also present facial challenges against two of Mr. Revill's federal claims: unlawful detention and malicious prosecution. Identical paragraphs found at Revill Doc. 10 at 4 and Garcia Doc. 22 at 4 cite the standard, found in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that a complaint must be plausible on its face to survive a motion to dismiss. But aside from these shallow facial challenges to Mr. Revill's malicious prosecution and unlawful detention claims, which the court addresses below, Defendants do not apply this standard to the facts of the complaint.

### 1. Unlawful Detention

Defendants move to dismiss Mr. Revill's Count 1 for unlawful detention in violation of the Fourth Amendment regarding the 30-minute period Defendants held Plaintiffs on the courthouse steps. Specifically, Defendants argue that they had reasonable, articulable suspicion that Plaintiffs were engaging in criminal activity during this stretch of time. (Revill Doc. 10 at 15.) Mr. Revill responds by asserting that Defendants' actions on the courthouse steps were not investigatory in nature because Defendants already knew all the relevant facts—that Mr. Edwards had given Ms. Garcia the phones prior to the issuance of the warrant—and that Mr. Revill had even suggested that he was willing to wait for Defendants to obtain a proper warrant, but Defendants declined to do so. (Revill Doc. 18 at 11.)

The applicable standard for unlawful detention comes from *Terry v. Ohio,* 392 U.S. 1, 88 (1968), which requires the court to examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. Under *Terry,* a law enforcement officer may detain a person briefly for an investigatory stop if the officer has a reasonable, articulable

14

suspicion, based on objective facts, that the person has or is about to engage in criminal activity. *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). The officer must have "some minimal level of objective justification" taken from the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 7–8 (1989).

Here, the analysis of this rule tracks the court's discussion regarding arguable probable cause, *supra*. The complaint alleges that Defendants saw Mr. Edwards give two phones to Plaintiffs prior to Defendants' execution of Mr. Edwards's search warrant. At that point, the phones were not subject to the search warrant. So after Plaintiffs encouraged Mr. Edwards to comply with the scope of the warrant, Defendants had no objective justification or reasonable, articulable suspicion under *Terry* to detain Plaintiffs in the hopes they would consent to an otherwise-unconstitutional search.

For these reasons, the court will DENY Defendants' motions to dismiss Mr. Revill's Count 1 for unlawful investigatory detention in violation of the Fourth Amendment.

### 2. Federal Malicious Prosecution under § 1983

Defendants appear to raise their facial plausibility challenge both to Plaintiffs' federal and state malicious prosecution claims. Because absolute immunity precludes Plaintiffs from bringing state law claims against Defendants, the court will not discuss Plaintiffs' malicious prosecution claims pursuant to state law. In challenging the facial plausibility of Mr. Revill's federal malicious prosecution claim (Revill Count 4), both motions to dismiss allege that Mr. Revill did not sufficiently allege the *malice* element of malicious prosecution. (Revill Doc. 10 at 14–15; Garcia Doc. 22 at 13–14.)

Where, as here, a plaintiff brings a federal malicious prosecution claim under § 1983, he must allege facts showing both a Fourth Amendment violation and the elements of the state law tort of malicious prosecution. *Kingsland v. City of Miami,* 382 F.3d 1220, 1234 (11th Cir. 2004).

As discussed above, Mr. Revill has alleged facts to support a Fourth Amendment violation, but he must also allege facts to support a malicious prosecution claim. In Alabama, the elements of this tort are "(1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding." *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831–32 (Ala. 1999). Defendants do not contest any of the elements except the second—that they acted "with malice."

Regarding the element of malice, the Alabama Supreme Court has explained that when "probable cause exists, proof of the highest degree of malice gains the plaintiff nothing. Yet, when probable cause is shown to be lacking, malice is essential to recovery." *Id.* at 832 (internal quotation omitted). In the malicious prosecution context, malice is defined as "any other motive than a *bona fide* purpose to bring the accused to punishment." *Lunsford v. Dietrich*, 93 Ala. 565, 569, 9 So. 308, 310 (1891). "Malice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful." *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 174 (Ala. 2000).

At this stage of the proceedings, Mr. Revill has alleged facts sufficient to infer that Defendants knew their acts might be wrong or unlawful. According to Mr. Revill's complaint, Deputy Ashworth said, "we either need the phone out of the satchel or we will have to detain you and get a search warrant to get the phone." (Revill Doc. 1 at 5.) Because this statement evinces Deputy Ashworth's knowledge that the proper course of action would have been to procure a warrant to search Plaintiffs, the fact that Defendants did *not* procure a warrant—and instead arrested Mr. Revill without one—sufficiently supports the inference that Defendants likely knew

16

their actions were unlawful. At the motion-to-dismiss stage, these factual allegations sufficiently plead malicious prosecution's second element, that of malice.

The court will DENY Defendants' motions to dismiss Mr. Revill's federal malicious prosecution claim (Count 4).

## IV. Conclusion

For the reasons discussed above, the court will GRANT IN PART and DENY IN PART Sue Ashworth's and Brian Ratliff's motions to dismiss. (Garcia Doc. 21; Revill Doc. 9.) The court will GRANT the motions to dismiss Ms. Garcia's complaint as to her state malicious prosecution claim (Count 2 against Deputies Ashworth and Ratliff). (Garcia Doc. 21.) The court will also GRANT the motion to dismiss Mr. Revill's complaint as to his state (but not federal) malicious prosecution claim (Count 5 against Deputies Ashworth and Ratliff). (Revill Doc. 9.) The court will DENY Defendants' motions as to all other claims.

The court will DISMISS WITH PREJUDICE Count 2 of Ms. Garcia's complaint and Count 5 of Mr. Revill's complaint because Defendants are entitled to absolute state immunity against suits for malicious prosecution pursuant to state law.

The remaining claims in this case are Ms. Garcia's Count 1 for unreasonable seizure in violation of the Fourth Amendment and Mr. Revill's Counts 1–4 for unlawful detention, unlawful arrest, false imprisonment, and malicious prosecution, each in violation of the Fourth Amendment.

The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 12th day of February, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE